# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MARK SCIBELLI,

            Plaintiff,

v.

CAS MEDICAL SYSTEMS, INC.,
MATTHEW HERWIG, KIM STRUSKY,
AND THOMAS PATTON,

            Defendants.

Civil Action No. 1:18-cv-10313-WGY

## ANSWER

Defendant, CAS Medical Systems, Inc. ("CASMED"), hereby answers the Complaint and Jury Demand ("Complaint") of Plaintiff, Mark Scibelli, as follows:

### Parties

1.      Upon information and belief, CASMED admits the allegations of Paragraph 1.

2.      CASMED admits that it is a Delaware corporation with a principal place of business in Branford, CT, and that it regularly does business in the Commonwealth of Massachusetts. CASMED further admits that its business includes the manufacture of medical cerebral oximetry monitors and accompanying sensors that are used in many surgical and non-surgical procedures. CASMED denies the remaining allegations in Paragraph 2.

### Facts

3.      CASMED admits that Kim Strusky is Executive VP of US Sales for CASMED and Thomas Patton is CEO of CASMED. CASMED denies the remaining allegations in Paragraph 3.

4.      CASMED admits that Plaintiff worked for CASMED from April 6, 2015 through October 6, 2016, and that CASMED engaged The Syverson Group who presented Plaintiff to them as a candidate.  CASMED denies that Plaintiff was "hired by then District Sales Manager, Kevin Phelan."  CASMED admits that Kevin Phelan was involved in the hiring process. CASMED denies the remaining allegations in Paragraph 4.

5.      Denied.  Further answering, with regard to the fifth sentence of Paragraph 5, CASMED states that, due in large part to a substantial capital order that Mr. Herwig helped Complainant close (including by making a joint sales call), Plaintiff was ranked third out of nine eligible salespeople for 2015 using a measurement that gave greater weight to revenue than to other factors such as evaluations.

6.      Denied; further answering, CASMED states that Mr. Herwig remained Vice President of Sales.

7.      Denied.  Further answering, CASMED states that Mr. Herwig did attend the referenced "sales closing meeting," and states that Kevin Phelan did not attend the referenced "sales closing meeting" but did attend an earlier meeting with this customer in November, 2015.

8.      CASMED denies the allegations in Paragraph 8.  Further answering, Defendant states that the referenced sale of monitors to Boston Children's Hospital was the second part of a sale initiated by the customer in late 2015; like that first sale, this one was also a windfall to Plaintiff, as the customer itself determined that it needed new monitors; Plaintiff benefitted from this windfall, but the sale of monitors to Boston Children's Hospital did not reflect any particular sales skill or performance by CASMED.

9.      Denied.

10.     CASMED denies the allegations in the first sentence of Paragraph 10.  CASMED admits the remaining allegations in Paragraph 10.  Further answering, CASMED states that Plaintiff did not identify this opportunity; instead, it was identified by the previous territory manager.  Further, Plaintiff failed to call on all relevant disciplines before commencing the evaluation, failing to discover the previously existing contract with MDT.

11.     Denied, except that CASMED admits that at times customers can work within their existing contracts without compromising the integrity of existing contractual agreements, and that Mr. Herwig secured a meeting with the VP of Surgical Services, Ms. Dorothy Ushel, who after multiple attempts agreed to a meeting with Mr. Herwig and Plaintiff.  Further answering, CASMED states that the contract referred to speaks for itself but that, to the extent that a response is required, the allegations concerning the contract are denied.   Further answering, CASMED states that it is without sufficient knowledge and information to admit or deny the allegations concerning how Plaintiff handled negotiations before working for CASMED or what St. Peter's clinicians had determined.  CASMED denies the remaining allegations in Paragraph 11.

12.     Denied, except that CASMED admits that Mr. Herwig would not support Plaintiff's desire to bill and ship sensors to a customer who had told CASMED that it could not go forward with the contract with CASMED due to its current contractual obligations with another entity.  Further answering, CASMED states that Ms. Strusky supported Mr. Herwig's position, as CASMED had expended considerable effort in trying to find a way to make the St. Peter's sale work, but when it became clear that it could not go forward Ms. Strusky and Mr. Herwig chose to do the right thing and preserve the relationship with St. Peter's, despite

Plaintiff's irrational insistence at this point to continue pushing for a sale. CASMED denies the remaining allegations in Paragraph 12.

13.     Denied. Further answering, CASMED states that, due to the change to Foresight elite technology, Yale New Haven Hospital ("YNHH"), an existing customer, had to upgrade its existing monitors. It also chose to add additional monitors to support clinical research; the 12 monitors for YNHH included the upgraded/replaced monitors.

14.     Denied, except that CASMED admits that a meeting was set up with YNHH in April 2016, and that Mr. Herwig was present at the meeting.

15.     Denied, except that CASMED admits that just prior to the referenced meeting Mr. Herwig did tell Plaintiff that it would be difficult to recover from his current position of not having enough new business if he did not immediately begin to bring in new business, and that if he did not improve in his efforts to bring in new business he would be put on a Performance Improvement Plan. Further answering, CASMED states that Plaintiff claimed that he had multiple targets for new business, but Mr. Herwig reminded him that targets would not meet his goals; instead, Plaintiff had to convert targets into new customers.

16.     CASMED admits that during the referenced meeting Plaintiff demanded that this existing customer purchase more sensors than they needed, and that Mr. Herwig acted appropriately by coming up with the right number of sensors to support the number of additional monitors requested by the customer. CASMED denies the remaining allegations in Paragraph 16.

17.     Denied, except that CASMED admits that the customer did order five additional monitors. Further answering, CASMED states that the delay in shipping the order was caused by the customer's delay in issuing a Purchase Order for the sensors. Further answering, to the

extent that Plaintiff questioned Mr. Herwig's approach concerning the number of sensors referenced in Paragraph 16, Mr. Herwig explained that the right thing to do was to sell the correct number of sensors to support the number of additional monitors requested by the customer.  CASMED denies the remaining allegations in Paragraph 17.

18.    CASMED admits that in December of 2015 or January of 2016, while preparing for a meeting with an existing customer, Mr. Herwig asked Plaintiff how old he thought the person they would be meeting with was, in order to assess whether they would be meeting with a more senior, experienced person or someone who was more junior, as it was helpful before the meeting to understand what the dynamics would be like.  CASMED denies the remaining allegations in the first five sentences of Paragraph 18.

18.(Herwigs Refusal to Attend & Support major sales opportunities )[1]

CASMED denies the allegations in the section of Paragraph 18 under the subheading "Herwigs Refusal to Attend & Support major sales opportunities" (ending with the subheading "Patton") except that CASMED admits that, at the time Plaintiff was hired, Mr. Phelan reported to Mr. Herwig, and that the Districts were subsequently redrawn and Mr. Herwig became Plaintiff's direct supervisor; CASMED further admits that Mr. Herwig did not attend the local territory trade shows referred to by Plaintiff (New England Society of Perfusionists Annual Meeting and New England Society of Anesthesiologists Meeting).  Further answering, CASMED specifically denies that Mr. Herwig did not support Plaintiff and Plaintiff's sales efforts, and states that Mr. Herwig had to justify the marketing costs allocated to these shows and that he got approval for Plaintiff's attendance at these shows to cultivate Plaintiff's own relationships and prospect for new business opportunities.

---

[1] Plaintiff's complaint often combines multiple paragraphs into one numbered section.  Because the numbered section 18 contains 16 paragraphs, they have been addressed in sections using the subheadings provided by Plaintiff.

18. (Patton)  CASMED admits that there was a meeting at which Mr. Patton, Dr. Brooker, and Plaintiff sat near each other, and that Dr. Brooker is a self-described car enthusiast, collector, and racer.  CASMED further admits that during the conversation Mr. Patton recalls Plaintiff discussing driving some type of car which caused him to gauge his age, and that Mr. Patton may have asked him his age and commented that he looks younger than his age. CASMED further admits that Mr. Patton and Plaintiff traveled together later in 2016 and had numerous discussions about Plaintiff's history, family, experiences and goals.  CASMED denies the remaining allegations in the "Patton" section of Paragraph 18 (see page 13 of the Complaint).

18. (Strusky)

In response to the first five sentences in Paragraph 18(Strusky), CASMED admits that Ms. Strusky began her employment with CASMED as Executive VP US Sales on October 5, 2015, and traveled to Branford, Connecticut that week for orientation and training.  CASMED further admits that within the first three or four days of her employment she went with Plaintiff on a field visit during which they met with several people including one key physician. CASMED denies that Ms. Strusky ever said or implied that new business was not important; although she may have said that "revenue is revenue," the context of the discussion was that new customer accounts should not be ignored by focusing only on expanding revenues in existing customer accounts.  Further answering, CASMED states that Ms. Strusky made clear numerous times after she came on board, including at a sales kickoff in January, 2016, at the company national sales meeting a few weeks later, and many times thereafter, that CASMED's sales strategy required continual new business ("new addresses") and not simply growing existing business.  CASMED denies the remaining allegations in the first through fifth sentences in Paragraph 18(Strusky).

In response to the sixth sentence in Paragraph 18(Strusky), CASMED admits that Ms. Strusky had a conversation with Plaintiff while they were watching a White Sox baseball game while in Chicago for the Midwest Summer Regional Sales Meeting.  CASMED further admits that Ms. Strusky had multiple phone conversations with Plaintiff, including calls to discuss Plaintiff's refusal to adhere to the chain of command.  CASMED denies the remaining allegations in the sixth sentence in Paragraph 18(Strusky).

CASMED denies the seventh sentence in Paragraph 18(Strusky).

To the extent not specifically admitted in the preceding responses, CASMED denies all allegations contained in Paragraph 18 of the Complaint.

19.     CASMED admits that Plaintiff was issued a PIP on July 19, 2016.  CASMED further admits, upon information and belief, that Plaintiff traveled to Syracuse, NY on or about October 5, 2016.  Further answering, CASMED states that while Mr. Herwig did not meet in person with Plaintiff to discuss the PIP in October, 2016, this was not due to a refusal by Mr. Herwig to discuss the matter with Plaintiff, but instead was a function of the travel schedules of Plaintiff and Mr. Herwig, Mr. Herwig's difficulty in pinning Plaintiff down concerning his schedule, and the desire to have Silvia Taylor, Human Resources Director, on the call. CASMED further states that it is without sufficient knowledge or information as to Plaintiff's state of mind or expectations.  CASMED denies the remaining allegations in Paragraph 19.

20.     CASMED admits that it terminated Plaintiff's employment with CAS Medical Systems, Inc. on October 5, 2016, during a phone call. CASMED further states that it is without sufficient knowledge or information as to whether Plaintiff was "shocked."  CASMED does not know what Plaintiff means by a "written review of the PIP" and states that the PIP was provided to Plaintiff in writing.  CASMED denies the remaining allegations in Paragraph 20.

21(a)[2]    CASMED admits the third and fifth sentences in Paragraph 21(a).  CASMED denies the sixth sentence of Paragraph 21(a), except that CASMED admits that Plaintiff was 880% of Total YTD Monitor Revenue Quota, due to a windfall in capital sales.  CASMED denies the remaining allegations in Paragraph 21(a).

21(b)   Denied, except that CASMED admits that "trials whose start date was to be selected by the customers" did not "count" insofar as they were not what the PIP required; the PIP required Plaintiff to "execute a minimum of one successful evaluation per month…"

21(c)    Denied.

21(d)    Denied.

21(e)    CASMED denies the first sentence of Paragraph 21(e) ("CASMED demonstrably replaced the majority…").  CASMED admits that Brad Cangiamila (date of birth 3/28/79) was hired for the territory manager job previously held by Plaintiff.  CASMED denies the remaining allegations in Paragraph 21(e).  CASMED denies the remaining allegations in Paragraph 21(e).

21(f)    Denied.

21(g)    Denied.

21(h)    Denied.

21(i)    Admitted, except that CASMED states that whether the "majority" of Plaintiff's compensation was performance based depended upon how much he earned in commission.  Further answering, CASMED states that when Plaintiff was hired, CASMED had been seeking an individual with a minimum of 5 years' experience in medical and/or surgical product sales; the decrease to 3-5 years' experience was made in order to broaden the pool of potential applicants, not for any discriminatory reason.

---

[2] Plaintiff's numbered section 21 goes on for 11 paragraphs, therefore Defendant will respond to them as paragraphs 21(a) through 21(k).

21(j)   CASMED admits that Plaintiff's 2016 nine month income was over $170,000, as it included sales commissions from December, 2015.  CASMED does not understand the allegations and calculations in the remaining portion of paragraph 21(j) and therefore denies them.

21(k)   Denied.

## Causes of Action

## Age Discrimination in Violation of G.L. c.151B

22.     Denied, except that CASMED admits upon information and belief that Plaintiff is over forty years of age.

23.     Denied.

24.     Denied.

25.     CASMED admits that Plaintiff had "income in excess of $170,000 in the last 9 months he was employed during 2016 with CASMED."  CASMED is without sufficient knowledge or information to admit or deny whether Plaintiff has been unable to secure employment since working for CASMED.  CASMED denies the remaining allegations in Paragraph 25.

## Unlawful Retaliation Pursuant to G.L. 151B/Wage Act Claim

26.     Denied.

27.     Denied.

In response to the "WHEREFORE" paragraph following Paragraph 27, CASMED denies that Plaintiff is entitled to the relief he seeks, and further denies that Plaintiff is entitled to any relief.

To the extent not specifically admitted or denied in the preceding responses, CASMED denies all allegations contained in the Complaint.

WHEREFORE, CASMED respectfully requests that this Court dismiss all claims of the Complaint, deny Plaintiff's requested relief and any relief whatsoever, enter judgment in favor of CASMED, and award CASMED its costs, reasonable attorneys' fees, and such other relief as this Court deems just and proper.

## AFFIRMATIVE AND OTHER DEFENSES

CASMED asserts the following affirmative and other defenses without assuming any burdens of production, persuasion, or proof that, pursuant to law, are not legally assigned to CASMED and are Plaintiff's burden to prove.  CASMED further avers that Plaintiff's claims are so vague as to render it impossible to identify every possible affirmative or other defense. CASMED expressly reserves the right to assert any additional affirmative or other defenses that may later come to light as a result of discovery and/or to amend this Answer to assert any such defenses.

*First Defense*

Plaintiff's claims are barred, in whole or in part, because they fail to state a claim upon which relief may be granted.

*Second Defense*

Plaintiff's claims are barred, in whole or in part, for failure to exhaust applicable administrative remedies or pre-filing obligations.

*Third Defense*

If Plaintiff suffered any damages, which CASMED expressly denies, such damages were caused by the conduct of others, including, without limitation, Plaintiff himself, for whose conduct CASMED is not responsible.

*Fourth Defense*

Plaintiff's claim is barred, in whole or in part, because any damages Plaintiff may have suffered were not proximately caused by any acts or omissions of CASMED.

*Fifth Defense*

Plaintiff's claims are barred, in whole or in part, or damages, if any, are reduced for failure to mitigate damages.

*Sixth Defense*

Plaintiff's claims are barred, in whole or in part, by the doctrines of release, estoppel, laches, unclean hands, and/or waiver.

*Seventh Defense*

Plaintiff's claims are barred, in whole or in part, because CASMED at all times acted in good faith and for legitimate business reasons, and the challenged employment practices are justified by legitimate, non-discriminatory, and non-pretextual business reasons unrelated to Plaintiff's age.

*Eighth Defense*

Plaintiff's claims are barred, in whole or in part, because he cannot establish a basis for liability against CASMED.

*Ninth Defense*

Plaintiff's claims are barred, in whole or in part, because Plaintiff has been paid all amounts earned.

**Reservation of Rights**

WHEREFORE, CASMED respectfully requests that this Court dismiss all claims of Plaintiff's Complaint, deny Plaintiff's requested relief and any relief whatsoever, enter judgment in favor of CASMED, and award CASMED its costs, reasonable attorneys' fees, and such other relief as this Court deems just and proper.

Respectfully submitted,

CAS MEDICAL SYSTEMS, INC.

By its attorneys,

/s/ Robert M. Shea
Robert M. Shea (BBO #556356)
Sandra E. Kahn (BBO #564510)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Telephone: (617) 994-5700
Facsimile:  (617) 994-5701
robert.shea@ogletreedeakins.com
sandra.kahn@ogletreedeakins.com

Dated:  February 26, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2018 a true and accurate copy of the foregoing document was served on *pro se* Plaintiff by email and first class mail as follows:

Mark Scibelli
50 Indian Trail
Barnstable, MA 02630
mlscibelli@icloud.com

/s/ Sandra E. Kahn
Sandra E. Kahn

32948675.3